Timothy Mark Cameron
**ABBOTT, Plaintiff,**

v.

**Jacquelyn Vaye ABBOTT, Defendant.**

**No. A–06–CA–359–LY.**

United States District Court,
W.D. Texas,
Austin Division.

July 6, 2007.

---

36. 28 U.S.C. § 2253(c)(2); *Miller–El*, 537 U.S. at 327, 123 S.Ct. 1029.

37. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

38. *Id.*

39. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir.2000) (per curiam).

Adair Dyer, Attorney at Law, Austin, TX, for Plaintiff.

John T. Barrett, Jr., Barrett, Whitworth, et al, Karl E. Hays, Law Offices of John Barrett, Austin, TX, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

YEAKEL, District Judge.

BE IT REMEMBERED that on February 16, 2007, this Court called the above entitled and numbered cause of action for trial. Plaintiff Timothy Mark Cameron Abbott ("Mr.Abbott") and Defendant Jacquelyn Vaye Abbott ("Ms.Abbott") each appeared in person and by counsel. Having carefully considered the evidence presented at trial, the pleadings on file, the law applicable to this action, and the arguments of counsel, this Court concludes that Mr. Abbott's request, under the Convention on the Civil Aspects of International Child Abduction done at The Hague on October 25, 1980 ("the Hague Convention"), for the return to Chile of his son, A.J.A., should be denied.[1]

### Jurisdiction and Venue

This Court has original jurisdiction of this action because it arises under the

---

1. All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

Hague Convention, implemented by the International Child Abduction Remedies Act ("ICARA"). 42 U.S.C. § 11603(a) ("the courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention"); *see Hague Convention on the Civil Aspects of International Child Abduction*, opened for signature October 25, 1980, T.I.A.S. 11,670, *reprinted in* 51 Fed.Reg. 10,494 (March 26, 1986). Venue is proper because the Court "is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed," which was Hays County, Texas, within the jurisdiction of the United States District Court for the Western District of Texas, Austin Division. *See* 42 U.S.C. § 11603(b).

## Findings of Fact

Mr. and Ms. Abbott were married on November 1, 1992. Their son, A.J.A., was born in Hilo, Hawaii on June 6, 1995. Mr. and Ms. Abbott and A.J.A. resided in La Serena, Chile for approximately three years beginning in 2002. Mr. and Ms. Abbott separated in the month of March, 2003. Following litigation in a Chilean family court concerning the respective parental rights of Mr. and Ms. Abbott, the Chilean court granted daily care and control of A.J.A. to Ms. Abbott and granted Mr. Abbott specific "direct and regular" visitation rights.[2] At Ms. Abbott's request, on January 13, 2004, the Chilean court rendered an *Orden de Arriago*, or *ne exeat* order, prohibiting A.J.A.'s removal from Chile by either Mr. Abbott or Ms. Abbott without their mutual consent. On August 26, 2005, Ms. Abbott removed A.J.A. from Chile to the United States without Mr. Abbott's prior knowledge or consent and clearly in violation of the Chilean *ne exeat* order. At the time Mr. Abbott filed the Complaint now before this Court, Ms. Abbott and A.J.A. resided in Hays County, Texas. Mr. Abbott seeks return of A.J.A. to Chile pursuant to the Hague Convention and ICARA.

On January 31, 2006, Mr. Abbott filed a "Petition for Temporary Enforcement of Order for Visitation Issued by a Competent Court of the Child's Home State and for Temporary Restraining Order and Order to Show Cause" in the 274th Judicial District Court of Hays County, Texas. Mr. Abbott brought the state-court action under the Texas Family Code, requesting expedited enforcement of the visitation orders rendered by the Chilean court, a temporary restraining order prohibiting Ms. Abbott from removing A.J.A. from Hays and Travis Counties, Texas, and an order requiring Ms. Abbott to show cause why the Court should not grant Mr. Abbott possession of A.J.A. and authorize Mr. Abbott to remove A.J.A. to Chile. *See* Tex. Fam.Code §§ 152.308 & 105.001 (West 2002). The state court denied the requested relief, but granted Mr. Abbott liberal possession of A.J.A. while Mr. Abbott remained in Texas during the month of February, 2006. Mr. Abbott commenced the present action in this Court on May 11, 2006.

## Conclusions of Law

### A. The Hague Convention and ICARA

The Hague Convention is an international treaty entered into force for the United States on July 1, 1988, the purpose of which is "to secure the prompt return of children wrongfully removed to or retained in any [c]ontracting [s]tate" and "to ensure that rights of custody and of access under the law of one [c]ontracting [s]tate are

2. Mr. Abbott contends that he retained residual rights to the care of A.J.A., but careful review of the record reveals that the Chilean family court granted all care and custody rights to Ms. Abbott, despite Mr. Abbott's petitions to the courts for custody of his son.

effectively respected in the other [c]ontracting [s]tates." Hague Convention, art. 1. ICARA establishes procedures for the implementation of the Hague Convention in the United States. 42 U.S.C. § 11601(b)(1). ICARA's provisions "are in addition to and not in lieu of the provisions of the Hague Convention." *Id.* at § 11601(b)(2).

Mr. Abbott, as the petitioner in the action for return of his child, has the burden of proof to establish by a preponderance of the evidence that A.J.A. "has been wrongfully removed or retained within the meaning of the Convention." *Id.* at § 11603(e)(1)(A). If A.J.A. has been wrongfully removed, the Court must order the return of A.J.A. to Chile immediately, because Mr. Abbott commenced this suit less than one year from the date of A.J.A.'s removal from Chile. *See* Hague Convention, art. 12.

The parties do not dispute that the Hague Convention applies to A.J.A.—he is under sixteen years of age and was "habitually resident" in Chile, a contracting state to the Hague Convention, at the time of his removal. *Id.* at art. 4. The parties also agree that A.J.A. was removed to the United States, a contracting state to the Hague Convention. *Id.* at art. 1.

■ The parties' dispute lies in whether A.J.A.'s removal was "wrongful" within the meaning of the Hague Convention. The Hague Convention provides

[t]he removal or the retention of a child is to be considered wrongful where -
*a* it is in breach of rights of custody attributed to a person, an institution or

any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
*b* at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
The rights of custody mentioned in subparagraph *a* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

*Id.* at art. 3.

Acknowledging that the *ne exeat* order rendered by the Chilean court on January 13, 2004, prohibited either parent's removal of A.J.A. without the other parent's consent, Ms. Abbott concedes that her removal of A.J.A. from Chile was in violation of Chilean law.[3] This Court may order A.J.A.'s return to Chile, however, only if Ms. Abbott's violation of Chilean law constitutes a "wrongful" removal as defined by the Hague Convention. Mr. Abbott asserts that the removal was wrongful because the *ne exeat* order created a "right[ ] of custody attributed to" Mr. Abbott under Chilean law, which was breached by Ms. Abbott's removal of A.J.A. from Chile. *See id.* at art 3a.

The majority of federal courts considering the issue have determined that a *ne exeat* order or statutory *ne exeat* provision does not accord rights of custody to a parent under the Hague Convention.[4] *E.g.*

---

3. Chilean law also requires the authorization of Mr. Abbott, as a parent with visitation rights, prior to a departure by A.J.A. from Chile. MINOR'S LAW 16,618 art. 49 (Chile). This Court finds that the statute does not confer rights distinguishable in any significant way from those conferred by the Chilean court's *ne exeat* order.

4. The opinions of courts in other signatory states to the Hague Convention are also "entitled to considerable weight." *Air France v. Saks,* 470 U.S. 392, 404, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). As outlined in *Gonzalez* and *Croll,* however, the cases from other signatory states addressing the rights conferred on a parent by a *ne exeat* order are "few, scattered, [and] conflicting" and thus do not

*Fawcett v. McRoberts,* 326 F.3d 491 (4th Cir.2003); *Gonzalez v. Gutierrez,* 311 F.3d 942 (9th Cir.2002); *Croll v. Croll,* 229 F.3d 133 (2nd Cir.2000). The Court of Appeals for the Eleventh Circuit has reached the opposite conclusion. *Furnes v. Reeves,* 362 F.3d 702 (11th Cir.2004). However, the case at bar is distinguishable from *Furnes.*

In *Furnes,* a provision in the Norwegian Children Act contained a *ne exeat* clause requiring both parents' consent prior to their child leaving Norway and living abroad. The Norwegian Children Act also granted the father with visitation rights "joint parental responsibility." *Id.* at 704–05, 714. Such responsibility gave the father the right "to make decisions for the child in personal matters," including "decisions that affect the child's care." *See id.* at 714. The *Furnes* court determined that such a right "may well grant [the father] a 'right of custody' as defined under the Convention," further concluding that the father held a right of custody when he had joint parental responsibility combined with the authority stemming from the *ne exeat* clause. *Id.* at 719 (distinguishing *Croll* on basis that father's *"ne exeat* right must be considered in the context of his additional decision-making rights by virtue of his joint 'parental responsibility' under Norwegian law"). Unlike the father in *Furnes,* Mr. Abbott does not have Chilean statutorily protected rights to make decisions affecting A.J.A.'s care.[5] The Fifth Circuit has not considered the effect of a *ne exeat* order on a parent's rights of custody. This Court is guided by *Fawcett, Gonzalez,* and *Croll,* finding these cases

guide this Court in its consideration of the issue. *Croll,* 229 F.3d at 143; *quoted in Gonzalez,* 311 F.3d at 952.

**5.** Mr. Abbott argues that Chilean law confers "residual" rights to care for the person of A.J.A., pointing to a statute that provides that a parent "who is not personally responsible

persuasive and directly applicable to the case *sub judice.*

▇ "In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning." *United States v. Alvarez–Machain,* 504 U.S. 655, 663, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). The Court must determine, under the "ordinary meaning" of the Hague Convention, whether Mr. Abbott had custody rights to A.J.A. at the time of A.J.A.'s removal from Chile. *Kreimerman v. Casa Veerkamp, S.A. de C.V.,* 22 F.3d 634, 638 (5th Cir.1994). The Hague Convention distinguishes two types of parental rights: rights of custody and rights of access, and grants a distinct set of protections to parents with each type of rights. *Compare* Hague Convention, art. 12 (requiring return of child removed in violation of parent's rights of custody) *to id,* art. 21 (describing application process for "arrangements for organizing or securing the effective exercise of rights of access" when child has been removed in violation of parent's rights of access). Only parents with *rights of custody* are granted the remedy of a court-ordered return to the child's country of habitual residence. *Id.*

The Hague Convention defines rights of custody as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." *Id.,* art. 5. Applying the Hague Convention's definition, this Court finds that the Chilean *ne exeat* order does not accord Mr. Abbott any rights relating to the care of A.J.A.'s person. Neither

for the care of a child will not be deprived of the right ... to maintain a direct and regular relationship with the child." *See* CODE CIVIL art. 229 (Chile). The Court disagrees, concluding that article 229 by its plain terms addresses only visitation rights, not rights to care for a child or other rights of custody as that term is defined by the Hague Convention.

does the order grant Mr. Abbott a right to "determine" A.J.A.'s place of residence; it merely grants Mr. Abbott the authority to prevent Ms. Abbott from taking A.J.A. to a location outside of Chile by withholding his consent. *See Croll,* 229 F.3d at 139 (referencing definition of "determine" as "to settle or decide by choice of alternative possibilities; to direct or control the end or course of" and concluding that *ne exeat* order did not grant father right to determine child's residence under the Hague Convention). The order thus grants Mr. Abbott no more than a veto power over specific places of residence that Ms. Abbott might have selected for A.J.A., without any accompanying power to control A.J.A.'s actual residence. *See id.; Gonzalez,* 311 F.3d at 949 (distinguishing custodial parent's affirmative right to determine precise location of child's residence from parent's right deriving from *ne exeat* order "to impose a limitation on the custodial parent's right to expatriate his child").

It further defies the ordinary meaning of the term "custody" to conclude that Mr. Abbott gained rights of custody in A.J.A. as a result of the Chilean court's *ne exeat* order. *See Gonzalez,* 311 F.3d at 949 (that father can refuse permission for his children to leave Mexico "hardly amounts to a right of custody, in the plainest sense of the term"). Upon the Chilean court's rendering of the *ne exeat* order, Ms. Abbott continued caring for A.J.A. and maintained control over the daily decisions regarding raising A.J.A., including determining A.J.A.'s place of residence. The order did

nothing to affect Mr. Abbott's "say (except by leverage) about any child-rearing issue other than the child's geographical location in the broadest sense." *Croll,* 229 F.3d at 140.

Furthermore, the clear intent of the Hague Convention is to distinguish between rights of access and rights of custody, furnishing greater protection for parents with rights of custody. Letter of Submittal of the Hague Convention on the Civil Aspects of International Child Abduction, by the Secretary of State to the President, Oct. 4, 1985, *reproduced in* 51 Fed. Reg. at 10,496 ("[v]isitation rights are also protected by the Convention, but to a lesser extent than custody rights"); *Croll,* 229 F.3d at 142 (quoting Perez–Vera Report at 444–45) ("Although the problems which can arise from a breach of access rights, especially where the child is taken abroad by its custodian, were raised ... the majority view was that such situations could not be put in the same category as the wrongful removals which [the Hague Convention] is sought to prevent.").[6] Although Ms. Abbott' removal of A.J.A. violated and frustrated the Chilean court's order, so too would the removal of a child from a country in which any parent with rights of access resided. *See Croll,* 229 F.3d at 142. Mr. Abbott's right of access, however enhanced and protected by the *ne exeat* order, is simply not sufficient to create rights of custody that warrant the greater protection intended under the Hague Convention.[7] This Court in no way condones Ms. Abbott's action. She clearly violated a

---

6. The Perez–Vera Report "is recognized ... as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Legal Analysis of the Hague Convention on the Civil Aspects of International Child Abduction, 51 Fed.Reg. 10,503.

7. Similarly, an order in a divorce decree requiring a mother and her minor child "to remain within the metropolitan area of Monterrey" does not confer custody rights on the father. *Ibarra v. Garcia,* 476 F.Supp.2d 630, 635 (S.D.Tex.2007). Any interference with the father's rights of access resulting from the child's removal in violation of such an order thus does not require return under the Hague Convention. *Id.*

proper order of the Chilean court—an order she herself sought. A.J.A.'s residence in the United States obviously interferes with Mr. Abbott's visitation rights, as established by the Chilean court. However, the Hague Convention explicitly creates a different set of remedies for those parents whose rights of access are frustrated by the custodial parent's removal of a child from the child's country of habitual residence. *See Hague Convention*, art. 12 and 21 (requiring return of child removed in violation of parent's rights of custody, while permitting parent to request "arrangements for organizing or securing the effective exercise of rights of access" if child is removed in violation of parent's rights of access), Just as the Hague Convention's drafters did not establish the return of the child as a remedy for such a situation, the return of A.J.A. would be equally inappropriate in light of Mr. Abbott's parental rights, to accomplish the purpose of the Hague Convention.

### B. Claim Preclusion

■ By way of affirmative defense, Ms. Abbott asserts, under the doctrine of claim preclusion, that Mr. Abbott is barred from bringing this action in federal court because Mr. Abbott's claims under the Hague Convention could and should have been litigated in Mr. Abbott's previous state-court action. "Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rivet v. Regions Bank*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (quotations omitted). Because the Court has concluded that Mr. Abbott's action under the Hague Convention fails, the Court need not and will not address Ms. Abbott's claim-preclusion defense.

### Conclusion

In accordance with the foregoing, the Court concludes that the Chilean court's *ne exeat* order, prohibiting the removal of A.J.A. from Chile by either parent without the consent of the other parent, does not confer rights of custody on Mr. Abbott. Mr. Abbott has not demonstrated that Ms. Abbott's removal of A.J.A. from Chile, although in violation of a proper order of a Chilean court, breached Mr. Abbott's rights of custody and was thus "wrongful" under the Hague Convention. The Court will render judgment denying Mr. Abbott's request for the return of A.J.A..

### FINAL JUDGMENT

Before this Court is the above-styled case. By Findings of Fact and Conclusions of Law signed this day, the Court concludes that Timothy Mark Cameron Abbott is not entitled to an order returning his son, A.J.A., to Chile under Article 12 of the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 ("the Hague Convention"). Accordingly, the Court signs the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that Timothy Mark Cameron Abbott **TAKE NOTHING** by his complaint against Jacquelyn Vaye Abbott.

**IT IS FURTHER ORDERED** that all relief not expressly granted is hereby **DENIED.**

**IT IS FINALLY ORDERED** that the case is hereby **CLOSED.**